UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WASHINGTON ELECTION INTEGRITY COALITION UNITED et al.,<br><br>Plaintiffs,<br>v.<br><br>DIANA BRADRICK et al.,<br><br>Defendants. | CASE NO. 2:21-cv-01386-LK<br><br>ORDER DENYING MOTION TO REMAND, DENYING MOTION TO INTERVENE, AND DISMISSING THE CASE SUA SPONTE FOR LACK OF SUBJECT MATTER JURISDICTION |

This matter comes before the Court on Washington Election Integrity Coalition United's ("WEICU's") motion to remand. Dkt. No. 11. The Court finds sua sponte that the individual Plaintiffs lack Article III standing. Because the Court has no supplemental jurisdiction over the remaining state law claims, and because remand to state court would be futile, the Court dismisses the case.

### I.   BACKGROUND

This action is one of several nearly identical actions originally filed in state court by WEICU and numerous pro se plaintiffs in counties across Washington, and one of six such actions

ORDER DENYING MOTION TO REMAND, DENYING MOTION TO INTERVENE, AND DISMISSING THE CASE SUA SPONTE FOR LACK OF SUBJECT MATTER JURISDICTION - 1

that have been removed to this Court.[1] Plaintiffs filed their complaint in Whatcom County Superior Court on September 10, 2021. Dkt. No. 1-2 at 1. Their claims center on the conduct of the November 2020 general election in Whatcom County, Washington.

The individual Plaintiffs[2] bring claims against Whatcom County Auditor Diana Bradrick for (1) permitting, overseeing, or directing the alteration of ballots; (2) engaging in a "cover-up campaign" to mislead the public regarding the alleged ballot tampering; (3) using open sleeves to store ballots completed online rather than the "security envelopes" required by state law; (4) using an uncertified voting system; and (5) violating the United States Constitution and the Washington State Constitution. *Id.* at 4–6, 8–16. For each of these alleged "wrongful acts," the individual Plaintiffs seek declaratory and injunctive relief. *Id.* at 9–10, 12–16, 18. They also seek damages against the Auditor for civil rights violations under 42 U.S.C. §§ 1983 and 1988. *Id.* at 17. WEICU's sole claim is against the Auditor and Whatcom County under Washington's Public Records Act ("PRA"), Wash. Rev. Code §§ 42.56.001–42.56.900, for wrongfully denying WEICU's records request for "ballots or electronic images of the ballots from the 2020 November election." Dkt. No. 1-2 at 6 (internal quotation marks omitted). WEICU seeks to "compel Defendants to provide access to ballots or electronic images of the ballots from the Election." *Id.*

Whatcom County and Bradrick ("Defendants") removed the case to this Court on October 12, 2021. Dkt. No. 1. On October 22, 2021, WEICU filed a motion to remand. Dkt. No. 11.

## II.  DISCUSSION

Defendants removed this action on the basis that this Court has original jurisdiction over it

---

[1] The five other removed actions are *Washington Election Integrity Coalition United v. Fell*, No. C21-1354-LK; *Washington Election Integrity Coalition United v. Kimsey*, No. C21-5746-LK; *Washington Election Integrity Coalition United v. Wise*, No. C21-1394-LK; *Washington Election Integrity Coalition United v. Anderson*, No. C21-5726-LK; and *Washington Election Integrity Coalition United v. Hall*, No. C21-5787-LK.

[2] The individual Plaintiffs are Darcy Lynn Hocker, Joseph Grant, and Evelyn Hopf. Dkt. No. 1-2 at 1.

under 28 U.S.C. § 1331. Dkt. No. 1 at 2. 28 U.S.C. § 1441 allows a defendant to remove an action filed in state court to federal district court where the federal district court has original jurisdiction.[3] The Ninth Circuit "strictly construe[s] the removal statute against removal jurisdiction," and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). "The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Id*. Ultimately, if a district court lacks subject matter jurisdiction over a removed action, it usually has the duty to remand it, for "removal is permissible only where original jurisdiction exists at the time of removal or at the time of the entry of final judgment[.]" *Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach,* 523 U.S. 26, 43 (1998); *see* 28 U.S.C. § 1441(a).

Because the Court lacks subject matter jurisdiction over Plaintiffs' federal claims, it cannot exercise supplemental jurisdiction over any of Plaintiffs' state law claims and must either remand or dismiss the entire case. The Court dismisses the Plaintiffs' claims because remand to state court would be futile.

**A.      Because the Individual Plaintiffs Do Not Have Article III Standing, this Court Lacks Subject Matter Jurisdiction over Their Claims**

At the outset, the Court recognizes that the right at issue in this case—the right to vote and have that vote counted—is "a fundamental matter in a free and democratic society." *Reynolds v. Sims*, 377 U.S. 533, 561–62 (1964). But a voter seeking relief in federal court for alleged violations of constitutional rights must have standing to do so, including "a personal stake in the outcome,

---

[3] The Defendants' notice of removal "was sufficient to advise [P]laintiff[s] that [D]efendants were relying on federal question jurisdiction as a basis for removal, and the fact that the notice did not specify which subsection of § 1441 [D]efendants were relying on does not mean that the notice was defective[.]" *Kabealo v. Davis*, 829 F. Supp. 923, 927 (S.D. Ohio 1993).

distinct from a generally available grievance about government." *Gill v. Whitford*, 138 S. Ct. 1916, 1923 (2018) (cleaned up). "[A] suit brought by a plaintiff without Article III standing is not a 'case or controversy,' and an Article III federal court therefore lacks subject matter jurisdiction over the suit." *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004). Article III's "case or controversy" requirement thus obligates federal courts to determine, as an initial matter, whether plaintiffs have standing to bring suit. *Lance v. Coffman*, 549 U.S. 437, 439 (2007). This is true even where the parties have not raised the issue. *See* Fed. R. Civ. P 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."); *D'Lil v. Best W. Encina Lodge & Suites*, 538 F.3d 1031, 1035 (9th Cir. 2008) ("[B]oth the Supreme Court and this court have held that whether or not the parties raise the issue, federal courts are required sua sponte to examine jurisdictional issues such as standing." (cleaned up)).

"To establish Article III standing, an injury must be 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010)). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 560 n.1). The injury must also be "concrete"; "that is, it must actually exist." *Id.* at 339–40.

The Supreme Court has "consistently held that a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy."

*Lance*, 549 U.S. at 439 (quoting *Lujan*, 504 U.S. at 573–74 (1992)); *see also Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("[T]he Court has held that when the asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction."). Accordingly, and in recognition "that a person's right to vote is 'individual and personal in nature,'" courts have long held that "'voters who allege facts showing *disadvantage to themselves as individuals* have standing to sue' to remedy that disadvantage." *Gill*, 138 S. Ct. at 1929 (emphasis added) (quoting *Reynolds*, 377 U.S. at 561 and *Baker v. Carr,* 369 U.S. 186, 206 (1962)). Plaintiffs fail to show such disadvantage and therefore lack Article III standing.

       1.    <u>Plaintiffs Do Not Allege that They Suffered Any "Concrete, Particularized, and Actual or Imminent" Injury from the Alleged Misconduct by the Auditor</u>

Plaintiffs' claims each follow a similar pattern: they allege a violation of law, ask the Court to declare the Auditor's duties under the law and enjoin her from violating the law, and then state that they "will suffer irreparable injury" from violations of their constitutional rights:

| **Allegation** | **Requested Declaration/Injunction** | **"Injury"** |
|---|---|---|
| Bradrick "acted in error and/or neglect by not adhering to the security envelope requirement of RCW 29A.40.091(1), and such acts directly facilitated the wrongful acts alleged herein," Dkt. No. 1-2 at 9, e.g., a County resident "observed suspicious activity taking place in a livestream video from the Whatcom County Elections ballot tabulation process" and recorded a video that "appears to demonstrate ballot tampering and other election irregularities," *id.* at 4, Bradrick "permit[ed]/overs[aw] and/or direct[ed] the alteration, and possible outright crossing out, of electors' votes and insertion of votes for an opposing candidate by an election worker working by herself with no election observers present," *id.* at 4–5, and "Bradrick appears to have engaged in wrongful acts in the form of a cover-up campaign to mislead the | Declare "Plaintiffs' rights and the duties of Defendant Bradrick, in the form of an order striking the sleeve option" from the regulation and requiring Bradrick to use a security envelope instead. *Id.* at 10. | "[T]he legislature has never approved the use of sleeves" and "[t]he open sleeves used by Defendant Bradrick allow for unfettered access to ballots prior to tabulation, are an invitation to ballot tampering" that "violate[s] Plaintiffs' right to absolute secrecy in preparing and depositing their ballots." *Id.* at 10. |

ORDER DENYING MOTION TO REMAND, DENYING MOTION TO INTERVENE, AND DISMISSING THE CASE SUA SPONTE FOR LACK OF SUBJECT MATTER JURISDICTION - 5

| Allegation | Requested Declaration/Injunction | "Injury" |
|---|---|---|
| public and prevent the public from learning the truth, further implicating Defendant Bradrick," *id.* at 5. | | |
| Plaintiffs "are informed and believe" that Bradrick used an "uncertified voting system to tabulate votes for the [2020] Election." *Id.* at 11. | Declare "Plaintiffs' rights and the duties of Defendant Bradrick, as they pertain to the electronic voting system" used in the 2020 election and in future elections, and restrain Bradrick from using any uncertified voting system. *Id.* at 12–13. | "Plaintiffs will suffer irreparable injury in that their fundamental rights under the Washington State Constitution and/or United States Constitution . . . will be further violated." *Id.* at 13. |
| Bradrick's conduct violated the United States Constitution, including the Fourteenth Amendment. *Id.* at 13–15. | Declare "Plaintiffs' rights and the duties of Defendant Bradrick, as they pertain to the [2020] Election and future elections in Whatcom County," and restrain the Bradrick from "[a]llowing, facilitating, or directing election staff or any other person to tamper with ballots in any illegal fashion," "[e]ngaging in a campaign to mislead the public about wrongful acts," "[p]ermitting unsecured ballot handling or processing," "[u]sing open sleeves," and/or "[u]sing an Uncertified Voting System." *Id.* at 16. | Same as above, *id.* at 16, and: "Because Director failed to follow state and federal law," County voters "were denied their fundamental right of suffrage without due process of law" and "had the value of their votes diluted, and the will of said voters denied, without due process of law," and County voters' ballots "were not treaty equally nor given equal levels of protection under the law." *Id.* at 15. |

In none of these allegations do Plaintiffs claim that they suffered any "concrete, particularized, and actual or imminent" injury from the Auditor's alleged misconduct. Although Plaintiffs do not explain their theory of vote dilution, it appears to be based on general allegations of election irregularities that affected the votes of all "qualified electors" in the County. *See* Dkt. No. 1-2 at 15 (because "Defendant Bradrick failed to follow state and federal law," "[q]ualified electors who voted similarly had the value of their votes diluted"). "As courts have routinely explained, vote dilution is a very specific claim that involves votes being weighed differently and cannot be used generally to allege voter fraud." *Bowyer v. Ducey*, 506 F. Supp. 3d 699, 711 (D. Ariz. 2020). *See also Feehan v. Wis. Elections Comm'n*, 506 F. Supp. 3d 596, 609 (E.D. Wis. Dec. 9, 2020) (plaintiff lacked standing where his "alleged injuries are injuries that any Wisconsin voter suffers if the Wisconsin election process were . . . so riddled with fraud, illegality, and statistical

impossibility" that its results could not be certified); *Martel v. Condos*, 487 F. Supp. 3d 247, 253 (D. Vt. 2020) ("A vote cast by fraud or mailed in by the wrong person through mistake has a mathematical impact on the final tally and thus on the proportional effect of every vote, but no single voter is specifically disadvantaged."); *Paher v. Cegavske*, 457 F. Supp. 3d 919, 926 (D. Nev. 2020) ("Plaintiffs' purported injury of having their votes diluted due to ostensible election fraud may be conceivably raised by any Nevada voter."); *Am. C.R. Union v. Martinez-Rivera*, No. 2:14-CV-026-AM-CW, 2015 WL 13650011, at *7 (W.D. Tex. Feb. 23, 2015) (speculative complaints of "potential vote dilution are nothing but a generalized grievance about government, complaining that an official should be required to follow the law."). Plaintiffs do not suggest that any votes were weighed differently, including their own. Thus, although allegations of vote dilution may create standing in some circumstances, they do not do so here.

Similarly, Plaintiffs never assert that they were personally harmed by any of Defendants' alleged conduct with respect to ballot tampering, misleading statements, the use of an uncertified voting system, or the use of ballot sleeves. *See generally* Dkt. No. 1-2.

To the extent Plaintiffs argue more broadly that they maintain an interest in government officials conducting an election in conformity with the Constitution, "they merely assert a 'generalized grievance' stemming from an attempt to have the Government act in accordance with their view of the law." *Wis. Voters All. v. Pence*, 514 F. Supp. 3d 117, 120 (D.D.C. 2021). *See also Lujan*, 504 U.S. at 576 ("the public interest in proper administration of the laws" is insufficient to create Article III standing, regardless of "the source of the asserted right"); *Wood v. Raffensperger*, 981 F.3d 1307, 1314 (11th Cir. 2020) ("An injury to the right 'to require that the government be administered according to the law' is a generalized grievance." (quoting *Chiles v. Thornburgh*, 865 F.2d 1197, 1205–06 (11th Cir. 1989))), *cert. denied*, 141 S. Ct. 1379 (2021); *Ickes v. Whitmer*, No. 1:22-CV-817, 2022 WL 4103030, at *3 (W.D. Mich. Sept. 8, 2022) (finding that "Plaintiffs

likely do not have standing to raise [their] concern about [allegedly uncertified] machines used in the November 2022 election or the possible destruction of records" because they "have only a generalized grievance that would be common among all people who cast a vote in the November 2022 election and not a particularized, individual injury").

Plaintiffs also lack standing to assert their claims under 42 U.S.C. §§ 1983 and 1988 because those claims are derivative of their other claims, which the Court has already found they lack standing to assert. Sections 1983 and 1988 do not create standing where it is otherwise lacking. *See Save Our Valley v. Sound Transit*, 335 F.3d 932, 936 (9th Cir. 2003) ("One cannot go into court and claim a 'violation of § 1983'—for § 1983 by itself does not protect anyone against anything." (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002))); 42 U.S.C. § 1988 (granting discretion to accord attorney's fees to the "prevailing party" in a suit under § 1983).

Because Plaintiffs have asserted only generalized grievances, the Court finds that Plaintiffs lack Article III standing to assert their federal claims.

    2.    <u>The Court Lacks Supplemental Jurisdiction over Plaintiffs' State Law Claims</u>

WEICU and Defendants dispute whether the Court may exercise supplemental jurisdiction over Plaintiffs' state law claims. Dkt. No. 18 at 4–7; Dkt. No. 19 at 5–6.

Under 28 U.S.C. § 1367(a), a district court "shall have" supplemental jurisdiction over claims that form part of the "same case or controversy" as claims within the court's original jurisdiction. However, "if the court dismisses [all federal claims] for lack of subject matter jurisdiction, it has no discretion" under Section 1367 to adjudicate the plaintiff's state-law claims "and must dismiss all claims." *Herman Fam. Revocable Tr. v. Teddy Bear*, 254 F.3d 802, 806 (9th Cir. 2001); *see also Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 664 (9th Cir. 2002) ("[W]ith the dismissal of [plaintiff's] federal constitutional claim for lack of standing, we have no authority to retain jurisdiction over [his] state law claims.").

Because the Court does not have subject matter jurisdiction over Plaintiffs' federal claims due to their lack of Article III standing, it has no discretion under 28 U.S.C. § 1367(c) to adjudicate the remaining claims. Without subject matter jurisdiction, the Court is left to either dismiss or remand Plaintiffs' claims. *See Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193, 1196–98 (9th Cir. 2016).

**B.      Plaintiffs' Claims Are Dismissed Because Remand Would Be Futile**

"If at any time before final judgment it appears that the district court lacks subject matter jurisdiction" over a case that has been removed from state court, "the case shall be remanded." 28 U.S.C. § 1447(c); *see also Polo*, 833 F.3d at 1196 (a district court lacking subject matter jurisdiction "generally *must* remand the case to state court, rather than dismiss it" (emphasis in original)). Usually, "[r]emand is the correct remedy because a failure of federal subject-matter jurisdiction means only that the *federal* courts have no power to adjudicate the matter. State courts are not bound by the constraints of Article III." *Polo*, 833 F.3d at 1196 (emphasis in original). However, the Ninth Circuit has held that a district court may dismiss a case rather than remand it to state court where it is "certain that a remand to state court would be futile." *Bell v. City of Kellogg*, 922 F.2d 1418, 1425 (9th Cir. 1991). Because remand of Plaintiffs' claims to state court is certain to be futile, the Court dismisses the claims instead of remanding them.

    1.      <u>The Futility Exception</u>

There is some doubt about the continued vitality of the futility exception. A few months after the Ninth Circuit decided *Bell*, the Supreme Court issued an opinion in which it noted that "the literal words of § 1447(c)" give "no discretion to dismiss rather than remand an action" over which a district court lacks original jurisdiction. *Int'l Primate Prot. League v. Administrators of Tulane Educ. Fund*, 500 U.S. 72, 89 (1991) (quoting *Maine Ass'n of Interdependent Neighborhoods v. Comm'r, Maine Dep't of Hum. Servs.*, 876 F.2d 1051, 1054 (1st Cir. 1989)).

1   Although the Supreme Court "did not reject the futility doctrine outright," the Ninth Circuit has
2   expressed concern that "[i]n the wake of *International Primate*, a number of other circuits have
3   expressly rejected the futility doctrine," and it "may no longer be good law." *Polo v. Innoventions*
4   *Int'l, LLC*, 833 F.3d 1193, 1197–98 (9th Cir. 2016) (citing *Hill v. Vanderbilt Capital Advisors,*
5   *LLC*, 702 F.3d 1220, 1225–26 (10th Cir. 2012) (collecting cases)). Despite this lingering doubt,
6   the Ninth Circuit in *Polo* declined to overrule *Bell*: "Polo has not argued that *Bell* is no longer
7   controlling law, and we decline to so hold *sua sponte*." *Id.* at 1198. The Ninth Circuit reiterated
8   that, under the *Bell* rule, a district court may dismiss a case "only when the eventual outcome of
9   [the] case after remand is so clear as to be foreordained[.]" *Id.*

10  Since the 2016 decision in *Polo*, some district courts in the Ninth Circuit have concluded
11  that the futility exception is now merely "[h]istorical[]." *Morgan v. Bank of Am., N.A.*, No. 2:20-
12  CV-00157-SAB, 2020 WL 3979660, at *2 (E.D. Wash. July 14, 2020); *see also Washington v.*
13  *City of Sunnyside*, No. 1:20-CV-3018-RMP, 2021 WL 4197368, at *2 (E.D. Wash. Aug. 26, 2021);
14  *Mendoza v. Aldi Inc.*, No. 219CV06870ODWJEMX, 2019 WL 7284940, at *2 (C.D. Cal. Dec. 27,
15  2019); *Alvarado v. Univ. of S. California*, No. CV 17-3671-GW(AJWX), 2017 WL 8116092, at
16  *5 (C.D. Cal. Sept. 21, 2017). However, other district courts have continued to apply the exception.
17  *See, e.g.*, *Strojnik v. Super 8 Worldwide Inc.*, No. C21-0927-PHX-DWL, 2022 WL 613227, at *3
18  (D. Ariz. Mar. 2, 2022); *Ross v. Hawaii Nurses' Ass'n Off. & Pro. Emps. Int'l Union Loc. 50*, 290
19  F. Supp. 3d 1136, 1148 (D. Haw. 2018); *Advocs. for Individuals With Disabilities LLC v. MidFirst*
20  *Bank*, 279 F. Supp. 3d 891, 895 & n.1 (D. Ariz. 2017).

21  There is good reason to embrace the concerns expressed in *Polo* about the validity of the
22  futility doctrine: as the Supreme Court and other courts have noted, it appears to contradict the
23  mandatory language of 28 U.S.C. § 1447(c). *Int'l Primate*, 500 U.S. at 89; *Esteves v. SunTrust*
24  *Banks, Inc.*, 615 F. App'x 632, 636–37 (11th Cir. 2015) ("The Supreme Court has noted that the

ORDER DENYING MOTION TO REMAND, DENYING MOTION TO INTERVENE, AND DISMISSING THE
CASE SUA SPONTE FOR LACK OF SUBJECT MATTER JURISDICTION - 10

literal words of § 1447(c) give district courts no discretion to dismiss rather than remand an action when subject-matter jurisdiction is lacking . . . Whether the matter is justiciable under state law is a matter for the state court to decide.") (cleaned up); *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1033 (8th Cir. 2014) ("If . . . the case did not originate in federal court but was removed there by the defendants, the federal court *must* remand the case to the state court from whence it came." (emphasis in original)); *Fent v. Okla. Water Res. Bd.*, 235 F.3d 553, 557–58 (10th Cir. 2000) ("The plain language of § 1447(c) gives no discretion to dismiss rather than remand an action removed from state court over which the court lacks subject-matter jurisdiction."); *Bromwell v. Michigan Mut. Ins. Co.*, 115 F.3d 208, 214 (3d Cir. 1997) ("In light of the express language of § 1447(c) and the Supreme Court's reasoning in *International Primate,* we hold that when a federal court has no jurisdiction of a case removed from a state court, it must remand and not dismiss on the ground of futility.").[4]

However, the Ninth Circuit has upheld application of the futility exception in several cases since *Bell. See, e.g.*, *Strojnik v. Driftwood Hosp. Mgmt., LLC*, No. 21-16060, 2022 WL 1642234, at *1 (9th Cir. May 24, 2022) ("The district court properly denied [plaintiff's] motion to remand the actions to state court because remand would have been futile."); *Glob. Rescue Jets, LLC v. Kaiser Found. Health Plan, Inc.*, 30 F.4th 905, 920 n.6 (9th Cir. 2022) ("A narrow 'futility' exception to this general rule permits the district court to dismiss an action rather than remand it if there is 'absolute certainty' that the state court would dismiss the action following remand."); *Marshall v. Motel 6 Operating LP*, 825 F. App'x 527, 528 (9th Cir. 2020) ("[W]e have recognized a futility exception to the remand mandate in § 1447(c)[.]"); *Rodriguez v. U.S. Healthworks, Inc.*,

---

[4] It also seems counter to the long-established principle that "[w]ithout jurisdiction the court cannot proceed at all in any cause" for a court without jurisdiction to effectively decide the merits of a case. *Ex parte McCardle,* 74 U.S. (7 Wall.) 506, 514 (1868).

ORDER DENYING MOTION TO REMAND, DENYING MOTION TO INTERVENE, AND DISMISSING THE CASE SUA SPONTE FOR LACK OF SUBJECT MATTER JURISDICTION - 11

813 F. App'x 315, 316 (9th Cir. 2020) (noting that the futility doctrine applies "when a district court has 'absolute certainty' that a state court would 'simply dismiss the action on remand'" (quoting *Polo*, 833 F.3d at 1198)). Because the Ninth Circuit explicitly declined to overrule *Bell* in *Polo* and has continued to apply the doctrine after *Polo*, the Court concludes that *Bell* remains binding precedent and therefore addresses whether it is certain that remand would be futile.

### 2. Dismissal of Plaintiffs' Claims on Remand Is Effectively "Foreordained"

In this case, dismissal of Plaintiffs' claims upon remand is effectively "foreordained." *Polo*, 833 F.3d at 1198. This action is one of eight nearly identical actions originally filed in state court in counties across Washington, six of which were removed to this Court. *See supra* at 2 n.1 (listing removed cases). Both of the cases that remained in state courts have already been dismissed, although appeals are currently pending. *See Wash. Election Integrity Coal. United v. Beaton*, No. 21-2-50572-11 (Wash. Sup. Ct. Dec. 13, 2021), *appeal filed sub nom. Wash. Election Integrity Coal. United v. Franklin Cnty.*, No. 391574 (Wash. Ct. App. Div. III Sept. 6, 2022); *Wash. Election Integrity Coal. United v. Schumacher*, No. 21-2-00042-22 (Wash. Sup. Ct. Mar. 28, 2022), *appeal filed sub nom. Schulz v. Schumacher*, No. 388841 (Wash. Ct. App. Div. III May 4, 2022). In *Schumacher*, the court concluded that "Plaintiffs' election claims are untimely and barred by statute and the equitable doctrine of laches, that the respective Plaintiffs each lack standing to bring the election claims alleged, . . . that Plaintiffs fail to state an election claim upon which relief may be granted," and "that Plaintiffs fail to state a claim upon which relief may be granted under the Public Records Act." No. 21-2-00042-22, slip. op. at 2 (Mar. 28, 2022). The court further found that "Plaintiffs' claims are frivolous and advanced without reasonable cause, are not well grounded in fact or warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law or the establishment of new law, and were interposed for improper purposes." *Id.* Similarly, in *Beaton*, the court found that, "for the reasons stated in Defendants'

Motion, Plaintiffs lack standing and have failed to state a claim upon which relief can be granted." No. 21-2-50572-11, slip. op. at 1 (Dec. 13, 2021).

The claims in the complaints that were dismissed in *Schumacher* and *Beaton* are nearly identical to the claims in this case: *Beaton* contained a nearly identical claim for use of an uncertified voting system, and *Beaton* and *Schumacher* both included nearly identical claims for violations of the federal and state constitutions and the PRA; both cases also contained allegations of vote flipping, additions, and/or deletions that are similar to the allegations of ballot tampering in this case. *See generally* Second Amended Verified Complaint, *Schumacher*, No. 21-2-00042-22 (Wash. Sup. Ct. Jan. 18, 2022) ("*Schumacher* Complaint"); First Amended Verified Complaint, *Beaton*, No. 21-2-50572-11 (Wash. Sup. Ct. Oct. 11, 2021) ("*Beaton* Complaint"). Substantial portions of all three complaints appear to be copied verbatim from one another. *See generally Schumacher* Complaint; *Beaton* Complaint; Dkt. No. 1-2.

Although there are some differences between the allegations in each of these cases, those differences are minor and could not plausibly justify a different outcome. For example, some of the allegations in *Beaton* and *Schumacher* are absent from the complaint in this case: in *Beaton*, plaintiffs included in their allegations of vote manipulation that "for several weeks during the Election, Auditor experienced problems with the signature verification system used to verify ballot envelope signatures, including without limitation, lost access to the state-supplied signature database." *Beaton* Complaint at 7; *see also Schumacher* Complaint at 5 (nearly identical allegation). In *Schumacher*, plaintiffs also alleged that "the Auditor's office experienced a ransomware attack that, among other things, blocked access to County computers and election systems which continued to be shut down through certification of the Election." *Schumacher* Complaint at 4–5. These allegations are made in *addition* to all the same allegations made in the complaint in this case, and for purposes of remand futility amount to an inconsequential difference.

ORDER DENYING MOTION TO REMAND, DENYING MOTION TO INTERVENE, AND DISMISSING THE CASE SUA SPONTE FOR LACK OF SUBJECT MATTER JURISDICTION - 13

1    The complaint in this case does contain claims that are not present in either *Beaton* or
2    *Schumacher*: Plaintiffs argue that the Auditor permitted, oversaw, or directed "the alteration, and
3    possible outright crossing out, of electors' votes," and engaged in a "cover-up campaign to mislead
4    the public and prevent the public from learning the truth[.]" Dkt. No. 1-2 at 5. Plaintiffs also argue
5    that the "wrongful acts alleged . . . were facilitated in part by the lack of ballot security envelopes
6    for the ballots available online," and that the Auditor failed to "adher[e] to the security envelope
7    requirement of RCW 29A.40.091(1)." Dkt. No. 1-2 at 9. But dismissal of these claims on remand
8    is just as assured as that of the claims that have already been specifically considered and rejected
9    in *Schumacher* and *Beaton*. This is because all of Plaintiffs' state law claims other than the PRA
10   claim share a common defect: they depend upon Section 29A.68.013 of the Revised Code of
11   Washington ("Section 13") as a vehicle for Plaintiffs' requested relief. Dkt. No. 1-2 at 4–5, 8–10,
12   10. As relevant here, Section 13 states that a judge "shall, by order, require any person charged
13   with error, wrongful act, or neglect to forthwith correct the error, desist from the wrongful act, or
14   perform the duty and to do as the court orders" where an affidavit of an elector demonstrates that
15   "[a]n error or omission has occurred or is about to occur in the official certification of any . . .
16   election," or that certain wrongful acts have been performed by, or a neglect of duty has occurred
17   on the part of, an election officer. Wash. Rev. Code § 29A.68.013. Importantly, Section 13 sets a
18   strict time limit: the elector's affidavit "shall be filed with the appropriate court no later than ten
19   days following the official certification of the . . . election." *Id.* The complaint was filed on
20   September 10, 2021, well past ten days after the certification of the 2020 general election. Dkt.
21   No. 1-2 at 1.

22   Plaintiffs do not allege that they complied with the time limit for filing actions under
23   Section 13. Rather, they argue that the 10-day limitations period does not apply to their claims
24   because they "are not seeking de-certification of the Election." Dkt. No. 1-2 at 3. But the plain

ORDER DENYING MOTION TO REMAND, DENYING MOTION TO INTERVENE, AND DISMISSING THE
CASE SUA SPONTE FOR LACK OF SUBJECT MATTER JURISDICTION - 14

language of Section 13 makes no exceptions, nor is relief under the section limited to de-certification of the election. *See* Wash. Rev. Code § 29A.68.013. Plaintiffs expressly seek injunctive relief under Section 13, and they are therefore required to satisfy Section 13's requirements before they may obtain any such relief. *See In re Feb. 14, 2017, Special Election on Moses Lake Sch. Dist. #161 Proposition 1*, 413 P.3d 577, 580 (Wash. Ct. App. 2018) (the statute "demands that an election contest be filed within ten days of the election's certification"); *see also, e.g.*, *Reid v. Dalton*, 100 P.3d 349, 354 (Wash. Ct. App. 2004) ("Filing an action for declaratory judgment, rather than one for direct relief, d[oes] not avoid the statute of limitation" for an election challenge; "[w]here . . . a special statute of limitation applies, even a declaratory judgment action is subject to the same statutory limitation."). There is no colorable argument that Plaintiffs have brought or can bring valid claims under Section 13.[5]

### 3. The Dismissal of WEICU's PRA Claim Is Also "Foreordained"

WEICU's PRA claim is also doomed under Washington law because Washington courts have already decisively rejected its legal theory. WEICU seeks to "compel Defendants to provide access to public records from the Election for a full forensic audit," and asserts that a records request it made under the PRA in August 2021 for "access to ballots or electronic images of the ballots" was wrongly denied on the grounds that the documents being requested were exempt by statute. Dkt. No. 1-2 at 6.

Under the PRA, "[a]n agency may lawfully withhold production of records if a specific exemption applies." *White v. Clark Cnty.* (*White I*), 401 P.3d 375, 378 (Wash. Ct. App. 2017). "There are three sources of PRA exemptions: (1) enumerated exemptions contained in the PRA

---

[5] Plaintiffs' claims under the Washington State Constitution must also fail because the Washington Supreme Court has "clearly established that the right to contest an election 'rests solely upon, and is limited by, the provisions of the statute relative thereto,'" *Becker v. Cnty. of Pierce*, 890 P.2d 1055, 1058 (Wash. 1995) (quoting *Quigley v. Phelps*, 132 P. 738, 738 (Wash. 1913))—here, Section 13.

itself, (2) any other statute that exempts or prohibits disclosure, and (3) the Washington Constitution." *Id.* (cleaned up). The "other statute" exemption is found in Section 42.56.070(1) of the Revised Code of Washington: "Each agency, in accordance with published rules, shall make available for public inspection and copying all public records, unless the record falls within the specific exemptions of . . . this chapter, or other statute which exempts or prohibits disclosure of specific information or records." Washington courts have squarely held that both Section 29A.60.110 of the Revised Code of Washington and Section 434-261-045 of the Washington Administrative Code create a statutory exemption for ballots and ballot images under the "other statute" exemption. *White I*, 401 P.3d at 378–80.

Section 434-261-045 of the Washington Administrative Code "unambiguously requires that ballots be kept in secure storage at all times other than during processing, duplication, inspection, and tabulation and states that they can *only* be accessed in accordance with RCW 29A.60.110 and 29A.60.125." *White I*, 401 P.3d at 379–80 (emphasis in original). And Section 29A.60.110 of the Revised Code of Washington "unambiguously requires that tabulated ballots be kept in sealed containers and can be opened by the canvassing board *only* in . . . specified situations": (1) as part of the canvass, (2) to conduct recounts, (3) to conduct a random check under RCW 29A.60.170, (4) to conduct an audit under RCW 29A.60.185, or (5) by order of the superior court in a contest or election dispute. *White I*, 401 P.3d at 379 (emphasis in original); *see also* Wash. Rev. Code § 29A.60.110(2). None of these situations apply here. WEICU lacks the authority to conduct a recount, random check, or audit. And, as discussed above, Plaintiffs failed to file a timely election contest. Wash. Rev. Code § 29A.68.013; *see also Becker*, 890 P.2d at 1058. Thus, WEICU's arguments are without merit: Section 29A.60.110 of the Revised Code of Washington does not authorize unsealing, and Section 434-261-045 of the Washington Administrative Code—which provides procedures for handling damaged ballots—expressly states

that "ballots must be sealed in secure storage at all times, except during duplication, inspection by the canvassing board, tabulation, or to conduct an audit under RCW 29A.60.185." All of the records WEICU requested fall under the "other statute" exemption.

WEICU makes several other arguments in support of its PRA claim, but those arguments have already been rejected by Washington courts or are clearly contrary to existing law. First, WEICU relies on its own interpretations of the Washington Constitution to argue that ballots should be disclosed, Dkt. No. 1-2 at 7, but Washington courts have already rejected those interpretations and have also held that Washington's election statutes provide the sole means of contesting an election. *See Becker*, 890 P.2d at 1058 (holding that the state constitution does not create an independent right of action, and the election statutes are the only means of contesting an election). Second, WEICU argues that the Washington Constitution "guarantees secrecy only in the preparation and deposit of ballots, and says nothing about secrecy following an election[.]" Dkt. No. 1-2 at 7 (emphasis in original). But under the PRA, "tabulated ballots are exempt in their entirety from disclosure." *White I*, 401 P.3d at 380. Third, WEICU argues that the Washington Constitution "does not prohibit public access to unidentifiable ballots after an election." Dkt. No. 1-2 at 7. Courts have rejected this proposition, too: "RCW 29A.60.110 and WAC 434-261-045 provide categorical exemptions, not conditional ones," and "no amount of redaction will transform the ballots into some other type of record." *White I*, 401 P.3d at 380; *see also White v. Skagit Cnty.* (*White II*), 355 P.3d 1178, 1185 (Wash. Ct. App. 2015) ("The constitutional mandate of *absolute* secrecy could not be adequately accomplished by just having government employees use their own discretion as to what is identifying on a ballot and what needs redaction." (emphasis in original)). Fourth, WEICU cites various Washington statutes and regulations permitting access to ballots or ballot images, Dkt. No. 1-2 at 7–8, but those statutes and regulations only permit access under a limited set of specified circumstances that do not exist here, as already explained. Finally, WEICU

asserts that "[n]umerous courts outside of Washington State have ruled that ballots are public records and subject to inspection," *id.* at 8, but Washington courts have found such cases unpersuasive because "they were decided within different statutory frameworks and under different factual circumstances," *White II*, 355 P.3d at 1184. And these courts' interpretation of the statutory framework at issue here weighs decisively against WEICU's claims. For these reasons, it is a "foreordained" conclusion that WEICU's PRA claim would be dismissed on remand, as the virtually identical claims in *Schumacher* and *Beaton* already have been.

In sum, remand of Plaintiffs' claims would be futile: dismissal of the claims is "foreordained" because they are clearly foreclosed by Washington law. *Polo*, 833 F.3d at 1198.

## IV.   CONCLUSION

For the reasons stated above, the Court DENIES WEICU's motion to remand, Dkt. No. 11, and sua sponte DISMISSES Plaintiffs' claims without prejudice. *See Collier*, 889 F.3d at 897 (a suit dismissed for lack of jurisdiction cannot also be dismissed with prejudice). The Washington State Democratic Central Committee's Motion to Intervene, Dkt. No. 14, is DENIED as moot.

Dated this 30th day of September, 2022.

*[signature]*

Lauren King
United States District Judge